In the Matter of the Estate of THOMAS DORNEY, a
Lunatic.   Appeal of ISIDOR RAYNER.

*Construction of sections 79, 83 and 86 of Article 16 of the
Code relating to the Jurisdiction of Courts of Equity, in the
matter of Sales of the Real estate of a Lunatic—Taxes due
by the Estate of a Lunatic.*

Section 79 of Article 16 of the Code gives to a Court of equity full
power and authority to make such orders and decrees respecting
the persons and estates of a lunatic as the Court may deem proper;
and if it stood alone, there could be no question of the power of
the Court, in all cases, and in any manner, to decree a sale.

By subsequent sections of the same Article, directing how, and in
what manner, this great power shall be exercised in *some* cases,
certain safe-guards are thrown around the procedure, not for the
purpose of restricting the jurisdiction of the Court, but for the
purpose of enabling it to act more advisedly.

In section 83 it is provided, that in cases of application to sell the
real or personal property of the lunatic, he shall appear and answer
by guardian appointed by the Court, and proof shall be taken as
in other chancery cases, &c., before such sale.   By section 86 of the
same Article (16th,) it is provided, that in all cases where a trustee
has been appointed by the Court for the management of the person
and estate of the lunatic, the Court may decree a sale of so much
of his property as may be necessary for his support, or for the pay-
ment of all reasonable expenses which said trustee may have
incurred.   HELD:

1st. That it could hardly have been contemplated by this 86th sec-
tion, that before the Court could order a sale of any of the prop-
erty of the lunatic to pay his reasonable and just expenses, a regu-
lar chancery proceeding should be instituted, the lunatic sum-
moned, a guardian appointed to answer for him, and proof, taken
under a commission, that the expenses were just and reasonable.

2nd. That the claim of a creditor of a lunatic stands upon a different
footing; and in cases where a creditor seeks to collect his debt, or
enforce his lien, an adversary proceeding, such as is prescribed in
section 83 of the Code, is the proper one.

Estate of Dorney, Lunatic.

The trustee of the estate of a lunatic died, and a new trustee was appointed in her place, who filed his petition verified by affidavit, asking that a part of the real property of the lunatic might be sold for the payment of taxes in arrear on his property, and of a debt incurred for his support. The petition set forth the facts showing the necessity for a sale, and designated the property which the trustee deemed it most advisable for the lunatic to sell. HELD:

1st. That taxes were a necessary incident attaching to the property of the lunatic, and were a part of the necessary expenses which his trustee was bound to pay.

2nd. That this petition presented a case that warranted the Court below in ordering a sale, without the formalities prescribed by section 83, of Article 16.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STONE, GRASON, MILLER, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Isidor Rayner,* for the appellant.

*William A. Fisher,* and *Charles Marshall,* for Rosenthal, the committee.

STONE, J., delivered the opinion of the Court.

Thomas Dorney was found upon inquisition, a lunatic in the year 1851. His sister Catherine C. Dorney, was appointed his committee and continued to act as such until December, 1881, when she died, and in January, 1882, Jacob S. Rosenthal was appointed committee in her place.

Soon after his appointment, Rosenthal filed a petition in the Superior Court of Baltimore City, stating that the property of the lunatic consisted of an annuity of $18, some store and dwelling houses in the city, and an un-

improved lot on Linden avenue, Baltimore. The petition further stated that there was due to the Sisters of Mount Hope, where the lunatic was confined, three hundred dollars, and that there was due for taxes in arrear on the property of the lunatic, upwards of two thousand dollars, and which taxes the collector was threatening to enforce the payment of. He also stated that the lunatic had no money to pay these pressing claims, and prayed that the Court would order a sale of the unimproved lot for the purpose of paying them. The petition was verified by affidavit of the committee, and the tax bills and a letter from the collector were made exhibits.

Upon this petition the Court ordered the sale of the lot on Linden avenue, which was duly advertised and sold to Rayner the appellant, and the sale reported to the Court. The appellant fearing that he might not obtain a good title, excepted to the sale, but the Court ratified it, and Rayner has appealed.

The only question presented to us for decision on this appeal, is whether a Court of equity has the rightful power in this case to decree a sale of a part of the real estate of the lunatic to pay these claims, upon the application of his committee, and the presentation of a *prima facie* case, and without going through the formalities prescribed in the 83rd section of Art. 16, of the Code, or in other words, whether the said 83rd section is applicable to this case?

The 79th section of Art. 16, of the Code, gives to a Court of equity full power and authority to make such orders and decrees respecting the persons and estates of a lunatic as the Court may deem proper.

This section is as comprehensive as language can make it, and if it stood alone there could be no question of the power of the Court in all cases, and in any manner to decree a sale.

Subsequent sections of the same Article, however, direct, how and in what manner, this great power shall be exer-

cised in *some* cases.   Certain safe-guards are thrown around
the procedure not for the purpose of restricting the juris-
diction of the Court, but for the purpose of enabling it to
act more advisedly.

Thus in section 83, it is provided that in cases of appli-
cation to sell the real or personal property of the lunatic,
there shall be his appearance and answer by guardian
appointed by the Court, and proof taken as in other Chan-
cery cases, &c., before such sale.

By the 86th section of the same Article (16th) it is pro-
vided that in all cases where a trustee has been appointed
by the Court for the management of the person and estate
of the lunatic, the Court may decree a sale of so much of
his property as may be necessary for his support or for the
payment of all reasonable expenses which said trustee
may have incurred.   We hardly think that it was ever
contemplated by this 86th section that before the Court
could order a sale of any of the property of the lunatic,
to pay his reasonable and just expenses, a regular Chan-
cery proceeding should be instituted, the lunatic summoned,
a guardian appointed to answer for him, and proof, taken
under a commission, that the expenses were just and reason-
able, before the decree for sale was passed.   As the ex-
penses of the lunatic are going on all the time, and as it
would be improper in the Court to sell more of the property
than would be sufficient to pay for the support and expenses
of the lunatic, for the time being, the process might have
to be repeated to the great cost of the estate.   The cus-
tody of the person and property of the lunatic must have
been already committed to the trustee before this 86th
section can apply, and he, the trustee, by virtue of his
appointment, is under the control and jurisdiction of the
Court, and subject to its orders, and we can see no good
reason why he should institute an adversary proceeding
against the lunatic committed to his charge, to enable him
to do what may be absolutely necessary for the lunatic's
comfort and well being, and the security of his estate.

This 86th Section is a codification of the Act of 1800, chap. 67, which recites in its preamble, that, whereas by existing law, the Chancellor was confined to the annual proceeds of the estate of lunatics in making provision for their support, and that it appeared reasonable that the power of the Chancellor should be increased, proceeded to authorize the Chancellor to sell such of the property as he may deem necessary for the support of the lunatic or payment of just and reasonable expenses of the trustee. This Act of 1800, did not prescribe any form of proceeding to make the sale valid, but only provided that the sale should be reported to, and confirmed by, the Chancellor.

The object of the Act appears to have been to give the Chancellor the same authority over the principal that he previously had over the income for the support of the lunatic, and the payment of expenses, and required no greater formalities in the one case than in the other, except that the sale should be ratified.

The claim of a creditor of the lunatic stands upon a different footing. As the lunatic himself cannot, after inquisition found, contract a debt, the claims of creditors must exist before the inquisition, or may consist of liens or incumbrances on his property. In cases where the creditor seeks to collect his debt, or enforce his lien, an adversary proceeding, such as is prescribed in section 83, of the Code, is the proper one.

Taxes are a necessary incident attaching to the property of the lunatic, and are a part of the necessary expenses which his trustee was bound to pay. For some reason not disclosed in the record, the former trustee seems to have permitted a large amount of these taxes to fall in arrear, and when the present trustee took charge of the person and property of the lunatic, he appears to have found the collector about to enforce the payment of the taxes by legal process, and the Sisters of Mount Hope clamorous for the sum due them for the support of their patient.

He filed his petition stating these facts, and designating therein what property he deemed it most advisable for the lunatic to sell for the payment of these necessary expenses, and gave his reasons therefor.

This petition was verified by affidavit, and we think presented a case that warranted the action of the Court below in ordering a sale without the formalities prescribed by the 83rd section, of Article 16.

*Order affirmed, and*
*cause remanded.*

(Decided 13th July, 1882.)